Atari Caribe, Inc., plaintiff *v.* United States, defendant

Court No. 89–02–00087

(Dated April 15, 1993)

*George R. Tuttle, A.P.C., (George R. Tuttle III),* for plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, United States Department of Justice, Civil Division, Commercial Litigation Branch *(Mark S. Sochaczewsky), Stephen Berke,* Attorney, United States Customs Service, of counsel, for defendant.

## Opinion

Restani, *Judge:* This matter was tried to the court on March 29 and March 30, 1993. The issue is whether a silicon chip containing an inte-

grated circuit and the printed circuit board to which it is affixed (a "chip-on-board" or "COB") comprise a monolithic integrated circuit classifiable under item 687.74 of the Tariff Schedules of the United States Annotated (1984) ("TSUSA–1984"),[1] or whether the combined article is something more. The COB is incorporated into an Atari video game cartridge, for use with a central processing unit ("CPU") that is attached to a television monitor. If the COB is more than a monolithic integrated circuit, it will be classified as a part in a game machine under item 734.20, TSUSA–1984,[2] as plaintiff claims.[3]

The legal precedent that dominates this area is *Texas Instruments Inc. v. United States,* 82 Cust. Ct. 272, C.D. 4810, 475 F. Supp. 1183 (1979), *aff'd,* 67 CCPA 59, C.A.D. 1244, 620 F.2d 269 (1980). That case involved a monolithic integrated circuit in the form of a chip bonded to a substrate to which leads were attached and which was encased in a plastic molded medium. The product was to be incorporated and used in a solid state electronic digital watch. The court found that the product should properly be classified as a transistor or other related electronic crystal component under item 687.60, TSUSA–1976, rather than as an assembly or subassembly for watch or clock movements.[4] In so classifying the product, the court declined to find that the substrate with leads and plastic mold rendered the merchandise *more than* an integrated circuit. It regarded both the encapsulating molded form and the substrate as auxiliary and subordinate to the integrated circuit chip. *Id.* at 284–85, 475 F. Supp. at 1191–92. The court finds that the case under consideration is distinguishable because some of the circuitry of the imported item, specifically that on the printed circuit board, is not incorporated into the integrated circuit chip. Thus, unlike the substrate in *Texas Instruments,* the substrate on which this chip is mounted has functions other than mere support or connection.

The "more than" test is one of the basic tests for determining whether an item is within an *eo nomine* classification item. This test is set forth in a number of cases including, *Servo-Tek Products Co. v. United States,* 57 CCPA 13, 15, C.A.D. 969, 416 F.2d 1398, 1399 (1969). Differently stated, the issue is whether the item "possess[es] features substantially in excess of those within the common meaning of the [*eo nomine*] term."

---

[1] Schedule 6, Pt. 5, TSUSA–1984, provides as follows:

Transistors and other related electronic crystal components; mounted piezo-electric crystals:

687.74  Monolithic integrated circuits .............................................. 4.2% ad val.

[2] Item A*734.20, TSUSA–1984, provides as follows:

Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof ........................ 4.7% ad val.

[3] For convenience, this opinion will cite to the TSUSA–1984 throughout, although entries were made during the period from March 1983 to April 1984. The text of the TSUSA is the same for both 1983 and 1984, but the rate applicable to items imported under 734.20, TSUSA–1983 is 4.7% *ad valorem,* whereas the rate for the same items under TSUSA–1984 is 4.5% *ad valorem.* Because the items are entitled to duty-free treatment under General Headnote 3(c)(ii), *see infra* note 5, the difference in rates does not matter to this case.

[4] At the relevant time in *Texas Instruments,* the TSUSA did not reference monolithic integrated circuits. *See* Item 687.60, TSUSA–1976. That language was added later to the corresponding TSUSA item. The difference does not appear significant, in view of the practice of classifying semiconductors under the earlier provision.

*United Carr Fastener Corp. v. United States,* 54 CCPA 89, 91, C.A.D. 913 (1967). To defendant's credit, it did not attempt to argue that the chip represents miles of wiring and rooms of tubes and for this reason the merchandise is *not more than* a monolithic integrated chip. Semiconductor chips have been with us too long and are too economically produced to sustain such arguments. In fact, the chip at issue represented approximately one-half of the value of the imported item, which itself was merely a part of the entire game package. Rather, the focus of the trial was on whether the industry views the product as an assembly, or as a monolithic integrated circuit.

Defendant's expert testified that he considered the item to be a monolithic integrated circuit rather than an assembly because under present standards all of the circuitry in the product could be integrated into one chip. In fact, he testified that if he could foresee integration in approximately two years he would consider any product, whether it contained one, two or three chips, to be a monolithic integrated circuit. The witness was clear that this was not an industry-wide view. This personal viewpoint, which depends on what merchandise *will become,* is not a reasonable method of making classification choices.

Plaintiff's expert testified that the item was not a monolithic integrated circuit because it is designed for consumer use, and with simple assembly into the cartridge is a consumer electronics product. The board is shaped, the end of the board is bevelled, and the electrical connectors end at specific points, all for the purpose of repetitive insertion and removal of the game cartridge by the consumer. Because of consumer use, the board contains extra shielding for static electricity and radio frequency radiation.

For comparison purposes, plaintiff offered into evidence a chip and printed circuit board, in chip form, bonded to a substrate with multiple leads (pins), which required engineering skill for assembly into a usable product. *See* Exhibit 8. The court has difficulty with the broad premise seemingly espoused by plaintiff's expert that the terms "monolithic integrated circuit" and "consumer electronics product" are mutually exclusive. The court does not discredit, however, the evidence that the particular highly advanced technical product with multiple leads and other features, which was introduced into evidence, is referred to in everyday industry parlance as an integrated circuit, while a chip on a conventional printed circuit board, such as the imported item, is not so viewed.

As indicated, of particular import in this case is the fact that the circuits on the printed circuit board at issue are not integrated into the chip. Certain electrical components are on the board and not in the chip for specific design reasons, primarily ease of consumer use. That later game cartridges may accomplish this end in other ways does not change the essence of the article. Important electrical and other aspects of this article are not contained in the monolithic integrated circuit chip itself. For these reasons, acceptance of this article as a *monolithic integrated*

chip is problematic. Furthermore, as these additional parts of the product are substantial and of particular design importance, it is most likely incorrect to view them as subordinate and auxiliary. *See Texas Instruments,* 82 Cust. Ct. at 285 (considering an element "coequal with the primary function and purpose" of the article not to be subordinate). Finally, and most importantly, the court reaches the conclusion that the totality of the evidence leads to a finding that the common meaning of the term "monolithic integrated circuit" does not include this item, and the relevant industry would not apply the term to this item.

The testimony clearly established, and there is no dispute, that the article is a part of a game machine. Classification as a part will not prevail if the article is described by name or specific function elsewhere. *See* General Headnote 10(ij), TSUSA–1984. As the article is not a monolithic integrated circuit, it is not specifically provided for elsewhere. Accordingly, plaintiff's claimed classification is applicable, and the entries covered by this action are non-dutiable.[5]

---

[5] At trial, the court ruled that thirty-five or more percent of the appraised value of the imported article was attributable to the direct costs of processing in Singapore. This is a prerequisite for plaintiff's assertion of duty-free treatment for this article under the Generalized System of Preferences. *See* General Headnote 3(c)(ii), TSUSA–1984. This issue was resolved in plaintiff's favor. The relevant findings of fact and conclusions of law may be found in the trial transcript.